1
2
3
4
5
6
7
8                       UNITED STATES DISTRICT COURT

9                      EASTERN DISTRICT OF CALIFORNIA

10

11   ROBBIE D. WHITE,                        No.  2:20-cv-02383-MCE-AC

12              Plaintiff,

13        v.                                 **MEMORANDUM AND ORDER**

14   CITY AND COUNTY OF WEST
     SACRAMENTO, et al.,
15
16              Defendants.

17        Through this action, Plaintiff Robbie White ("Plaintiff" or "White") seeks to recover

18   damages against the City of West Sacramento ("City"), the West Sacramento Police

19   Department ("WSPD"), Officer Fortier, Officer N. Ogden ("Ogden"), Officer Mahaffey

20   ("Mahaffey"), and Officer A. Schreiber ("Schreiber")[1] (collectively "Defendants").  Plaintiff

21   alleges that Defendants, among other things, discriminated against him on the basis of

22   race, used excessive force in his arrest, falsely charged him with nonexistent crimes,

23   and violated his rights under the state and federal constitutions.  Presently before the

24   Court is Defendants' Motion to Dismiss claims one and two to the extent they are

25   premised on a <u>Monell</u> theory of liability, and claims five, seven, and eight of the

26   Complaint.  ECF No. 4 ("Motion") (citing ECF No. 1, Ex. A, First Amended Complaint

27   ///

28   _____
          [1] The full names of the individual police officers are unknown.  ECF No. 6 at 3.

1 ("Complaint")).  For the reasons that follow, Defendants' Motion is GRANTED with leave

2 to amend.[2]

3

4                                        **BACKGROUND**

5

6          Plaintiff is a 59-year-old African American male, who is a military veteran and a

7 retired peace officer.  In July 2019 he went to the WSPD with a female friend to inquire

8 about a call and police response to his home that occurred approximately three days

9 prior.  As Plaintiff was speaking with the front desk clerk in the lobby, an unidentified

10 Caucasian man in civilian clothes entered the area and began walking back and forth

11 nearby.  The man interrupted Plaintiff's conversation with the clerk and began yelling,

12 "Shut up!"  He then threatened Plaintiff, "You don't know who I am and what I'll do to

13 you," and proceeded to use a nearby phone to request police assistance.

14          Shortly thereafter, between eight and ten Caucasian officers, including

15 Defendants Ogden, Fortier, Mahaffey, and Schreiber, entered the lobby and detained

16 and handcuffed Plaintiff.  According to Plaintiff, he informed the officers that he was a

17 retired peace officer and that he needed assistance because he'd been threatened by

18 the unidentified man in the lobby.  He also advised the officers that he smelled the odor

19 of alcohol on Defendant Ogden.

20          In detaining Plaintiff, the officers employed pain compliance tactics, twisting

21 Plaintiff's thumbs and shoulders.  They then put him in a hot patrol car, leaving the

22 windows rolled up.  Plaintiff was eventually informed that he was arrested for disorderly

23 conduct, drunk in public, and resisting arrest.

24          Plaintiff was transported to booking at approximately 3:00 p.m. but not given an

25 alcohol screening test until 10:00 p.m.  The results showed no alcohol in his system.

26 Plaintiff was nonetheless placed in a "filthy cell that was filled with urine, feces, and

27 ───────────

28
    [2] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs.  ECF No. 5; see E.D. Cal. Local Rule 230(g).

1  blood."  Compl. ¶ 18.  He was denied food, water, or medical treatment, and was

2  released several hours later.

3        All criminal charges against Plaintiff were eventually dismissed.  The state court

4  determined that there was no probable cause to arrest Plaintiff or make physical contact

5  with him and eventually declared Plaintiff factually innocent.  This action followed.

6  Defendants now seek to dismiss claims regarding Monell (Claims One and Two);

7  malicious prosecution (Claim Five); negligent hiring, training, and retention (Claim

8  Seven), and the Unruh Civil Rights Act (Claim Eight).

9

10                                       **STANDARD**

11

12        On a motion to dismiss for failure to state a claim under Federal Rule of Civil

13  Procedure ("FRCP") 12(b)(6), all allegations of material fact must be accepted as true

14  and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut.

15  Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Rule 8(a)(2) "requires only 'a short and

16  plain statement of the claim showing that the pleader is entitled to relief' in order to 'give

17  the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"

18  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson,

19  355 U.S. 41, 47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss

20  does not require detailed factual allegations.  However, "a plaintiff's obligation to provide

21  the grounds of his entitlement to relief requires more than labels and conclusions, and a

22  formulaic recitation of the elements of a cause of action will not do."  Id. (internal citations

23  and quotation marks omitted).  A court is not required to accept as true a "legal

24  conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

25  (quoting Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a right

26  to relief above the speculative level."  Twombly, 550 U.S. at 555 (citing 5 Charles Alan

27  Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating

28  ///

                                             3

that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 555 n.3 (internal citations and quotation marks omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright & Miller, supra, at 94, 95).  A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570.  If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id.  However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend.  Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend).  Not all of these factors merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. ///

1    1989) ("Leave need not be granted where the amendment of the complaint . . .

2    constitutes an exercise in futility . . . .")).

3

4    **ANALYSIS**

5

6    **A.    The Complaint Fails to State a Claim for <u>Monell</u> Liability.**

7    Plaintiff's attempt to hold the City and WSPD liable for his injuries under <u>Monell v.</u>

8    <u>New York City Department of Social Services</u>, 436 U.S. 658 (1978), is unavailing.

9    Municipalities and local officials cannot be vicariously liable for the conduct of their

10   employees under § 1983, but rather are only "responsible for their own illegal acts."

11   <u>Connick v. Thompson</u>, 563 U.S. 51, 60 (2011) (citing <u>Monell</u>, 436 U.S. at 665-83).   In

12   other words, a municipality may only be liable where it individually caused a

13   constitutional violation via "execution of government's policy or custom, whether by its

14   lawmakers or by those whose edicts or acts may fairly be said to represent official

15   policy." <u>Monell</u>, 436 U.S. at 694.  The Supreme Court has made clear that plaintiffs may

16   not merely state that a municipal employee wronged them to achieve success on a

17   <u>Monell</u> claim: "Where a plaintiff claims that the municipality has not directly inflicted an

18   injury, but nonetheless has caused an employee to do so, <u>rigorous standards of</u>

19   <u>culpability and causation must be applied</u> to ensure that the municipality is not held liable

20   solely for the actions of its employee."  <u>Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown</u>,

21   520 U.S. 397, 405 (1997) (emphasis added).  Similar demands apply to allegations of

22   inadequate training.  <u>See City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 389-91 (1989).

23   Following <u>Twombly</u> and <u>Iqbal</u>, the Ninth Circuit Court of Appeals held that <u>Monell</u>

24   plaintiffs must provide allegations that are not mere recitations of the elements of such a

25   claim, and such facts must plausibly suggest entitlement to relief.  <u>AE ex rel.</u>

26   <u>Hernandez v. Cty. of Tulare</u>, 666 F.3d 631, 637 (9th Cir. 2012); <u>see, e.g.</u>, <u>Dougherty v.</u>

27   <u>City of Covina</u>, 654 F.3d 892, 900-01 (9th Cir. 2011).

28   ///

5

1    Plaintiff's Complaint offers only conclusory allegations that City and WSPD

2 executed policies and customs that would support <u>Monell</u> liability.  <u>See, e.g.</u>, Compl.

3 ¶ 41.  Such conclusory allegations are insufficient to state a claim.  Accordingly, the first

4 two causes of action are DISMISSED with leave to amend.

5        **B.    Plaintiff's Fifth Cause of Action for Malicious Prosecution Fails**
        **Because Under the Facts as Pled Defendants are Entitled to**
6        **Immunity.**

7    "In California, the elements of malicious prosecution are (1) the initiation of

8 criminal prosecution, (2) malicious motivation, and (3) lack of probable cause."[3]  <u>Usher v.</u>

9 <u>City of Los Angeles</u>, 828 F.2d 556, 562 (9th Cir. 1987); <u>see also</u> <u>Awabdy</u>, 368 F.3d at

10 1066.  California Government Code § 821.6, under which Defendants claim immunity,

11 provides: "A public employee is not liable for injury caused by his instituting or

12 prosecuting any judicial or administrative proceeding within the scope of his

13 employment, even if he acts maliciously and without probable cause."  This immunity

14 extends to police officers.  <u>See, e.g.</u>, <u>Baughman v. State of California</u>, 38 Cal. App. 4th

15 182, 192 (1995); see also <u>Asgari v. City of Los Angeles</u>, 15 Cal. 4th 744, 757, 937

16 (1997) ("Under California law, a police officer may be held liable for false arrest and false

17 imprisonment, but not for malicious prosecution.").  The section "frees investigative

18 officers from the fear of retaliation for errors they commit in the line of duty."  <u>Baughman</u>,

19 38 Cal. App. 4th at 193.

20    Plaintiff asserts that section 821.6 does not apply due to two exceptions.  First,

21 Defendants intended to deprive Plaintiff of his constitutional right to equal protection.

22 Opp'n at 8 (citing <u>Usher v. City of Los Angeles</u>, 828 F.2d 556, 562 (9th Cir. 1987)); <u>see</u>

23 <u>Larramendy v. Newton</u>, 994 F. Supp. 1211, 1213-16 (E.D. Cal. 1998) (explaining the

24 ///

25 ///

26 ─────────────────
    [3] It is undisputed that the acts of the named officers led to the initiation of a criminal prosecution
27 against Plaintiff.  The fact that Plaintiff was not only cleared of charges — but declared factually innocent
    — is strong evidence of a lack of probable cause.  <u>See</u> <u>Awabdy v. City of Adelanto</u>, 368 F.3d 1062, 1068
28 (9th Cir. 2004).  Plaintiff avers, in fact, that the state judge presiding over his case declared there was no
    probable cause to arrest him.  Compl. ¶ 19.

1   exception).[4]  Second, Plaintiff avers that Defendants exceeded their authority with the

2   use of excessive force.  Opp'n at 9 (citing Blankenhorn v. City of Orange, 485 F.3d 463

3   (9th Cir. 2007)).[5]

4        Usher did indeed create such an exception when a claim was brought under

5   42 U.S.C. § 1983.  See Usher, 828 F.2d at 561-62.  As an initial matter, it is unclear if

6   Plaintiff is bringing his malicious prosecution claim under state or federal law.  Either

7   way, Plaintiff's charge that officers sought to violate his constitutional right to equal

8   protection is entirely conclusory in alleging that the officers arrested Plaintiff due to his

9   race.  See Compl. ¶ 63; Opp'n at 8.  Accordingly, claim five of Plaintiff's Complaint is

10  DISMISSED with leave to amend.

11       **C.    Plaintiff has not Identified a Statutory Basis for Liability to Support
             his Seventh Cause of Action for Negligent Hiring, Training and
12           Retention.**

13       In support of this claim, Plaintiff alleges that Defendant City negligently hired,

14  supervised, and retained the named officers in the instant suit, "knowing that each

15  employee was unfit and incompetent to work as police officers."  Compl. ¶¶ 73-74.

16  However, claims for direct tort liability against public entities must be based on a specific

17  statute.  See Cal. Gov. Code § 815(a).[6]  Plaintiff fails to identify such a statute, and he

18  cannot.  Cf. Johnson v. Shasta Cty., 83 F. Supp. 3d 918, 936 (E.D. Cal. 2015) ("With

19  respect to hiring and supervision practices, . . . there is no statutory basis under

20  California law for declaring an entity directly liable for negligence.").  Therefore,

21  Defendants' Motion is GRANTED with leave to amend as to the seventh cause of action.

22  ///

23  ///

24
25       [4] An initiation of charges in bad faith, evidence of racial animus, and the criminal proceeding
     ending in the complainant's favor may all contribute to a cognizable claim for malicious prosecution under
     § 1983.  See Usher, 828 F.2d at 562.

26
27       [5] Blankenhorn does not create the exception for malicious prosecution envisioned by Plaintiff, and
     it is not considered further.  See Blankenhorn, 485 F.3d at 488.

28       [6] Plaintiff's argument that liability should be extended to the City under Government Code § 815.2
     is rejected because that statute provides for vicarious liability, which has no bearing on this direct claim.

1
2

**D.    Plaintiff has Failed to Allege that Defendants are Subject to Liability Under the Unruh Act.**

3    Plaintiff contends Defendants violated the Unruh Civil Rights Act by discriminating

4   against him based on his race.  Compl. ¶¶ 77-81 (citing Cal. Civ. Code §§ 51 et seq.).

5   The Unruh Civil Rights Act provides protection from discrimination from "all business

6   establishments of every kind whatsoever" in the State of California.  See Cal. Civ. Code

7   § 51.  California's Department of Fair Employment and Housing asserts that the term

8   "business establishments" may include governmental and public entities.  Public Access

9   Discrimination and Civil Rights, Dep't Fair Employment & Housing (Dec. 2017),

10   https://www.dfeh.ca.gov/wp-content/uploads/sites/32/2017/12/DFEH_UnruhFactSheet.pdf.

11   Although Plaintiff does identify several cases where public schools or school districts

12   were determined to qualify as "business establishments,"[7] he offers no cases — and this

13   Court is aware of none — where the Unruh Civil Rights Act was applied to police

14   departments.  Indeed, numerous California state courts and some federal courts have

15   found against the application of the Unruh Act to cities.  See Willie Rubin v. City of

16   Inglewood, No. CV 20-319-MWF-E, 2020 WL 5413026, at *4 (C.D. Cal. July 17, 2020)

17   (collecting cases).

18    This Court concludes that the Unruh Act does not apply here.  A California

19   appellate court in Brennon B. v. Superior Ct. of Contra Costa Cty. found that school

20   districts were not business establishments for purposes of the Unruh Act.  57 Cal. App.

21   5th 367, 369-97 (2020) (including, inter alia, criticism of federal cases finding to the

22   contrary).  Likewise, police departments are already subject to "stringent anti-

23   discrimination laws," including a "panoply of antidiscrimination statutes."  See id. at 370.

24   Moreover, "nothing in the historical context from which the Unruh Act emerged suggests

25   the state's earlier public accommodation statutes were enacted to reach 'state action.'

26

27   [7] See Whooley v. Tamalpais Union High Sch. Dist., 399 F. Supp. 3d 986, 997 (N.D. Cal. 2019) (school districts); Yates v. E. Side Union High Sch. Dist., No. 18-CV-02966-JD, 2019 WL 721313, at *2-3 (N.D. Cal. Feb. 20, 2019) (public schools); Sullivan By & Through Sullivan v. Vallejo City Unified Sch. Dist., 731 F. Supp. 947, 952 (E.D. Cal. 1990) (public schools).

28

1  And there is much authority to the contrary . . . ."  Id. at 372; see id. at 379 (finding that

2  the legislative history does not suggest that the Act was intended to reach state

3  conduct).  Finally, while the California Supreme Court has not directly addressed the

4  topic, a review of cases from the state high court indicates that the Unruh Act is

5  designed to solely reach private discriminatory conduct.  See id. at 388.  Accordingly,

6  Defendants' Motion to Dismiss claim eight is GRANTED with leave to amend.

7

8                                          **CONCLUSION**

9

10       In consideration of the foregoing, Defendants' Motion to Dismiss (ECF No. 4) is

11  **GRANTED** with leave to amend.  Not later than twenty (20) days following the date this

12  Memorandum and Order is electronically filed, Plaintiff may, but is not required to, file an

13  amended complaint.  If no amended complaint is timely filed, the causes of action

14  dismissed by virtue of this Order will be deemed dismissed with prejudice upon no

15  further notice to the parties.

16       IT IS SO ORDERED.

17

18       Dated:  September 7, 2021

19

20                                          MORRISON C. ENGLAND, JR.
                                            SENIOR UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28

                                            9