UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBBIE D. WHITE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CITY AND COUNTY OF WEST SACRAMENTO, et al.,<br><br>　　　　Defendants. | No.  2:20-cv-02383 MCE AC PS<br><br><br>FINDINGS AND RECOMMENDATIONS |

  This civil rights action was removed to federal court on December 1, 2020.  ECF No. 1.  Plaintiff is now proceeding in pro se following the withdrawal of his attorney.  ECF No. 32.  Pre-trial proceedings were accordingly referred to the undersigned pursuant to Local Rule 302(c)(21).  ECF No. 34.  Pending before the court is a motion to dismiss parts of this case brought by defendants City and County of West Sacramento, Officer Mahaffey, Officer N. Ogden, and Officer A. Schreiber.  ECF No. 30.  Plaintiff opposes the motion.  ECF No. 42.  The matter was heard via zoom on January 26, 2022.  ECF No. 46.

  For the reasons that follow, the undersigned recommends that the motion be GRANTED in part and DENIED in part.  Plaintiff should be permitted to proceed on his excessive force, assault and battery, and false arrest claims against Officers Ogden and Mahaffey, as well as his First Amendment retaliation claim against Officer Ogden.  These claims lie at the heart of

1

plaintiff's case. The other claims in the complaint, however, cannot support relief and should be dismissed.

## I. BACKGROUND

### A. Procedural History

Plaintiff initially filed this case though counsel in Yolo County Superior Court on October 23, 2020. The state court complaint presented nine claims: (1) violation of 42 U.S.C. 1983-Arrest; (2) violation of 42 U.S.C. 1983/5-Conspiracy to Arrest, Detention, Confinement; (3) Negligence; (4) Assault; (5) Malicious Prosecution; (6) False Arrest; (7) Negligent Hire, Training, and Retention; (8) Unruh Civil Rights Claims; and (9) Intentional Infliction of Emotional Distress. ECF No. 1 at 5-21. Plaintiff named as defendants the City and County of West Sacramento ("West Sacramento"), and West Sacramento police officers N. Ogden, Fortier, Mahaffey, and A. Schrieber. Id. Defendants filed a motion to dismiss on December 29, 2020. ECF No. 4. U.S. District Judge Morrison C. England granted the motion on September 7, 2021. ECF No. 26. In that order, Judge England dismissed plaintiff's first, second, fifth, seventh, and eighth causes of action with leave to amend. Plaintiff's operative First Amended Complaint ("FAC") was filed September 22, 2021. ECF No. 27. The FAC was drafted and signed by plaintiff personally, not by counsel. Id.

Shortly after the FAC was filed, on October 4, 2021, plaintiff's counsel moved to withdraw from this case. ECF No. 29. On October 6, 2021, the present motion to dismiss was filed. ECF No. 30. On October 13, 2021, Judge England granted counsel's motion to withdraw, leaving plaintiff in pro se, and the case accordingly was referred to the undersigned for pretrial matters. ECF No. 32, 34. The motion to dismiss was then re-set for hearing before the undersigned. ECF No. 36, 43. Plaintiff opposes dismissal. ECF No. 42.

### B. The First Amended Complaint

The First Amended Complaint names as defendants the City of West Sacramento, the West Sacramento Police Department ("WSPD"), and Officers Mahaffey, Ogden, and Schreiber.

////

////

2

ECF No. 27 at 1.[1]  The FAC alleges, against all defendants, six claims under 42 U.S.C. § 1983: (1) Eighth Amendment; (2) Excessive Force; (3) False Arrest; (4) Substantive Due Process; and (5) First Amendment Freedom of Speech.  Claim Six is brought under § 1983 against the City West Sacramento only, for Municipal Liability.  Claims Seven and Eight are brought against all defendants under state law: Claim Seven for Assault, and Claim Eight for Interference with Civil Rights under California Civil Code Section 52.1.  ECF No. 27.

The First Amended Complaint alleges in sum as follows.  Plaintiff is a 60-year-old African American male, who is a military veteran and a retired peace officer.  ECF No. 27 at ¶ 12.  In July 2019 he went to the WSPD with a female friend to inquire about a call and police response to his home that had occurred approximately three days prior.  Id. at ¶ 13.  As plaintiff was speaking with the front desk clerk in the lobby, an unidentified Caucasian man in civilian clothes entered the area and began talking loudly on his cell phone and walking back and forth nearby.  Id. at ¶ 14.  The man interrupted plaintiff's conversation with the clerk and began yelling, "Shut up!"  Id. at ¶ 15.  He then threatened plaintiff, "You don't know who I am and what I'll do to you," and proceeded to use a nearby phone to request police assistance.  Id. at ¶ 16.

Shortly thereafter, between eight and ten Caucasian officers, including Defendants Ogden and Mahaffey, entered the lobby and detained and "violently" handcuffed plaintiff.  Id. at ¶ 17.  Plaintiff informed the officers that he was an injured retired peace officer and that he needed assistance because he'd been threatened by the unidentified man in the lobby.  Id. at ¶ 18.  Plaintiff advised the officers that he smelled the odor of alcohol on defendant Officer Ogden.  Id. at ¶ 19.  Immediately after the alcohol comment, Officer Ogden angrily slammed the handcuffed plaintiff against a wall and pinned him to the hot stucco.  Id. at ¶ 21.  In detaining plaintiff, the officers employed pain compliance tactics, twisting plaintiff's thumbs and shoulders while plaintiff did not resist.  Id. at ¶ 20.  Officer Ogden, with apparent supervisor sanction and the aid of another unknown officer, then employed a two-man tactic to hyper extend plaintiff's cuffed arms to double him over and force his head down toward the ground.  Id. at ¶ 22.  In full sight of

---

[1] Formerly named defendants County of West Sacramento and Officer Fortier are dropped.

senior officers, the defendants walked plaintiff in this forced posture approximately 50 yards to the patrol car. Id. at ¶ 23. They then put him in a hot patrol car, leaving the windows rolled up. Id. at ¶ 24. Plaintiff was eventually informed that he was arrested for public drunkenness and resisting arrest. Id. at ¶ 25.

Plaintiff was transported to booking at approximately 3:00 p.m. but was not booked until 10:30 p.m. and was refused a breath alcohol test. Id. at ¶¶ 27-29. Plaintiff was nonetheless placed in a "filthy cell that was filled with urine, feces, and blood" and was denied food, water, or medical treatment. He was not released until 2:30 a.m., into a rural area, on July 3, 2019. Id. at ¶¶ 29-30.

On or about July 18, 2019, plaintiff received anonymous threats not to return to West Sacramento, leaving him displaced and in fear. Id.

Plaintiff alleges all defendants participated in and assisted in his detention and/or arrest. Id. at ¶ 35. All criminal charges against plaintiff were eventually dismissed. Id. at ¶ 37. The state court determined that there was no probable cause to arrest plaintiff or make physical contact with him and eventually declared plaintiff factually innocent. Id.

## II. ANALYSIS

### A. Motion to Dismiss

Defendants' motion seeks partial dismissal of this case. Specifically, defendants seek dismissal of (1) plaintiff's Eighth Amendment claim, (2) the excessive force claim as to defendant officers Mahaffey and Schreiber, (3) the false arrest claim, (4) the Fourteenth Amendment substantive due process claim, (5) the claim for First Amendment liability, (6) the claim for municipal liability, (7) the state law assault claim, and (8) the claim under Cal. Civ. Code § 52.1. ECF No. 30-1.

### B. Legal Standard

"The purpose of a motion to dismiss pursuant to Rule 12(b)(6) [of the Federal Rules of Civil Procedure] is to test the legal sufficiency of the complaint." N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri

4

v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990).  To survive dismissal for failure to state a claim, a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  It is insufficient for the pleading to contain a statement of facts that "merely creates a suspicion" that the pleader might have a legally cognizable right of action.  Id. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-35 (3d ed. 2004)).  Rather, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  In reviewing a complaint under this standard, the court "must accept as true all of the factual allegations contained in the complaint," construe those allegations in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010), cert. denied, 131 S. Ct. 3055 (2011); Hebbe v. Pliler, 627 F.3d 338, 340 (9th Cir. 2010).  However, the court need not accept as true legal conclusions cast in the form of factual allegations, or allegations that contradict matters properly subject to judicial notice.  See Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.), as amended, 275 F.3d 1187 (2001).  The court may also consider facts which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d 1385, 1388 (9th Cir. 1987), and matters of public record, including pleadings, orders, and other papers filed with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986).

Pleadings prepared by pro se parties are held to a less stringent standard than those drafted by lawyers, Haines v. Kerner, 404 U.S. 519, 520 (1972), and are construed with particular liberality, Nordstrom v. Ryan, 762 F.3d 903, 908 (9th Cir. 2014).

////

////

      C.      <u>Claims That Survive the Motion to Dismiss</u>

            1.    <u>Excessive Force Claim Against Officers Ogden and Mahaffey</u>

The FAC brings an excessive force claim under § 1983 against "All Defendants." ECF No. 27 at ¶¶ 43-45. The motion seeks dismissal of this claim as against Officers Mahaffey and Schreiber, on grounds that the FAC does not allege with particularity the force employed by these defendants that would raise a plausible right to relief "above the speculative level." See <u>Twombly</u>, 550 U.S. at 555. The motion does not seek dismissal of this claim as stated against Officer Ogden, who is plainly alleged to have been the primary aggressor.

Claims that law enforcement officers used excessive force during an arrest are analyzed under the Fourth Amendment and its "reasonableness" standard. <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989). Thus, courts evaluating excessive force claims ask whether the officer's actions were objectively reasonable based on the information the officer had when the force was used. <u>Id.</u> at 397. The right to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof," thus not every use of physical force violates the Fourth Amendment. <u>Graham</u>, 490 at 396.

Here, plaintiff alleges that 8-10 officers, including Ogden and Mahaffey, detained and "violently handcuffed" him. ECF No. 27 at ¶ 17. He alleges that "the officers employed severe pain compliance tactics, twisting [his] thumbs and shoulders excessively while [he] offered no resistance." <u>Id.</u> at ¶ 20. He alleges that Officer Ogden "angrily slammed" him "against a wall and penned [sic] him to the hot stucco" and with "the aid of another unknown officer employed a two man tactic to hyper-extend [his] cuffed upper extremities to double him over and force his head downward towards the ground." <u>Id.</u> at ¶¶ 21, 22). Plaintiff alleges that "the Defendants … walked [him] in this forced posture approximately 50 yards to a patrol car" and "put him in the hot patrol car, leaving the windows rolled up." <u>Id.</u> at ¶¶ 23, 24.

These allegations are sufficient to state a claim. Under the circumstances described in the complaint, the slamming of plaintiff into the wall and the use of pain compliance techniques to effect an arrest and apply handcuffs appear objectively unreasonable. While the moving defendants correctly identify an absence of any specific allegations regarding Officer Schreiber's

6

participation in the use of force, the FAC does specifically allege that Officer Mahaffey joined Officer Ogden in violently handcuffing plaintiff. Id. at ¶ 17. Accordingly, the claim lies against Officer Mahaffey as well as Officer Ogden.

### 2. Assault and Battery Claim Against Officers Ogden and Mahaffey

The court construes plaintiff's assault claim as one for assault and battery under California law. This is the state law counterpart of a federal claim of excessive force, and is supported by allegations that a law enforcement officer's use of force was unreasonable. See Brown v. Ransweiler, 171 Cal. App. 4th 516, 527 (2009); Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 922 (9th Cir. 2001). Because plaintiff's Fourth Amendment excessive force claim is adequately pled as to Officers Ogden and Mahaffey, so is its state law counterpart.

### 3. False Arrest Against Officers Ogden and Mahaffey

"Arrest by police officers without probable cause violates the Fourth Amendment's guarantee of security from unreasonable searches and seizures, giving rise to a claim for false arrest under § 1983." Caballero v. City of Concord, 956 F.2d 204, 206 (9th Cir. 1992). "An arrest is supported by probable cause if, 'under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the suspect] had committed a crime.'" Oceanside Organics v. County of San Diego, 341 F. Supp. 3d 1129, 1142 (S.D. Cal. 2018) (quoting Call v. Badgley, 254 F.Supp.3d 1051, 1066 (N.D. Cal. 2017)).

Defendants argue that plaintiff does not state a false arrest claim because he does not identify who officially informed him that he was under arrest; indeed his only allegation regarding "arrest" is that he was "was eventually informed that he was arrested for public drunkenness and resisting arrest." ECF No. 27 at ¶ 25. They argue further that the allegations involving Officers Ogden and Mahaffey involve only detention and not arrest. ECF No. 31-1 at 6. The court rejects defendants' narrow reading of the complaint.

The FAC states that officers including Ogden and Mahaffey entered the lobby and detained and "violently" handcuffed plaintiff without cause, and then put him in a patrol car. ECF No. 27 at ¶¶ 17-35. "When a detention becomes an arrest is determined by state law, subject

to such minimum constitutional standards as the Supreme Court has prescribed." Wilson v. Porter, 361 F.2d 412, 416 (9th Cir. 1966). California defines arrest as "taking a person into custody." California Penal Code, § 834. Construed liberally, the FAC sufficiently alleges that Officers Mahaffey and Ogden were personally involved in plaintiff's arrest, which was unsupported by probable cause. Accordingly, a false arrest claim is stated against these defendants.

### 4. Retaliation Claim Against Officer Ogden

The First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech. "If an official takes adverse action against someone based on that forbidden motive, and non-retaliatory grounds are in fact insufficient to provoke the adverse consequences, the injured person may generally seek relief by bringing a First Amendment claim." Nieves v. Bartlett, 139 S. Ct. 1715, 1722 (2019) (internal citations omitted). To prevail on such a claim, a plaintiff must show that the speech was the "but for cause" of the adverse action. Id. The FAC alleges that plaintiff advised the officers that he smelled alcohol on Officer Ogden, and then was "immediately" slammed against a wall and subsequently taken into custody. ECF No. 27 at ¶¶ 19-21. These allegations are sufficient to support the required retaliatory intent. The facts of the FAC, which must be accepted here as true, show no other reason for the use of force. Plaintiff states a First Amendment claim against Officer Ogden.

### D.   Claims That Do Not Survive the Motion to Dismiss

#### 1.   The FAC Does Not State an Eighth Amendment Claim

Plaintiff asserts a claim under the Eighth Amendment against all defendants. ECF No. 27 at ¶¶ 40-42. The factual basis for this claim is unspecified; all previously alleged facts are incorporated by reference, without limitation. Id. In any event, plaintiff cannot maintain an Eighth Amendment claim on any basis because "[t]he Eighth Amendment's prohibition of cruel and unusual punishments applies only after conviction and sentence." Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001) (citations and internal quotation marks omitted). In this case plaintiff was detained pursuant to arrest, not pursuant to a conviction or sentence. ECF

No. 42 at 5-6. Accordingly, the Eighth Amendment does not apply to his detention or to any events that occurred while he was detained.

Unexplained references to the Eighth Amendment typically suggest issues regarding conditions of confinement. At hearing, plaintiff affirmed that one of his intended grounds for relief is based on the unsanitary conditions of the cell in which he was held at the jail. The rights of pretrial detainees arise under the Due Process Clause, which prohibits punishment prior to an adjudication of guilt in accordance with due process of law. Bell v. Wolfish, 441 U.S. 520, 535 (1979). Unsanitary or otherwise unsafe conditions can, when severe enough, violate the Eighth Amendment rights of convicted prisoners by rising to level of cruel and unusual punishment, or violate the Fourteenth Amendment rights of pretrial detainees by rising to the level of punishment. See Anderson v. County of Kern, 45 F.3d 1310, 1314, as amended, 75 F.3d 448 (9th Cir. 1995); Martino v. Carey, 563 F. Supp. 984, 999-1000 (D. Or. 1983).

Assuming that this claim is directed at the conditions of plaintiff's cell, and construing it as a due process claim, it fails to state a claim for relief. To state a claim for unconstitutional conditions of pretrial detention, plaintiff must allege facts demonstrating an intent to punish the detainee. See Demery v. Arpaio, 378 F.3d 1020, 1029 (9th Cir. 2004) (identifying punitive intent as an essential element of pretrial detainee's Due Process claim); Hatter v. Dyer, 154 F. Supp. 3d 940, 945 (C.D. Cal. 2015) (same). The FAC does not allege facts demonstrating punitive intent on behalf on any defendant who made the decision to place plaintiff in the cell. Indeed, the FAC does not identify the defendant(s) responsible for the condition of the cell or for the decision to place plaintiff there. Absent allegations demonstrating punitive intent, the claim fails.

Alternatively, a pretrial detainee may proceed on a theory of objective deliberate indifference, which is akin to reckless disregard. Castro v. County of Los Angeles, 833 F.3d 1060, 1068, 1070 (9th Cir. 2016). To state a claim for deliberate indifference, a plaintiff must establish the following four elements:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
>
> (2) Those conditions put the plaintiff at substantial risk of suffering serious harm;

>(3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
>
>(4) By not taking such measures, the defendant caused the plaintiff's injuries.

Id. at 1070. "With respect to the third element, the defendant's conduct must be objectively unreasonable." Id. (citing Kingsley v. Hendrickson, 576 U.S. 389, 396-97 (2015)). The FAC is devoid of factual allegations demonstrating that any defendant made an intentional and objectively unreasonable decision to put plaintiff into an unsanitary cell that posed a substantial and known risk.

Moreover, and fatally to this claim, temporary exposure to unsanitary conditions does not rise to the level of a constitutional violation. Anderson v. County of Kern, 45 F.3d 1310 (9th Cir.1995). The FAC's brief description of the cell's condition is simultaneously vague and hyperbolic,[2] but it is plain that plaintiff's confinement in this offensive environment lasted approximately 8 hours before plaintiff was released from jail. ECF No. 27 at ¶ 29.

For all these reasons, plaintiff's putative Eighth Amendment claim must be dismissed. To the extent that this claim is meant to object to the fact of plaintiff's detention and not merely the condition of the cell, it is duplicative of the false arrest claim which should go forward.

### 2. The FAC Does Not State an Excessive Force or Assault and Battery Claim Against Officer Schreiber

Although the FAC makes sufficiently specific allegations against Officers Ogden and Mahaffey, the allegations against other officers are undifferentiated. Plaintiff's allegations against "the officers" as a group, without specifying who did what, cannot state a claim against any individual officer. See Destfino v. Reiswig, 630 F.3d 952, 958 (9th Cir. 2011) (a complaint that alleges "everyone did everything" fails to satisfy federal pleading standards). In the absence of specific acts by Officer Schreiber that involve objectively unreasonable force, no claim is stated under the Fourth Amendment or California law.

---

[2] It is not plausible that the cell was literally "filled" with blood and human waste. See ECF No. 27 at 5.

        3.   <u>The FAC Does Not State a False Arrest Claim Against Defendants Other Than Ogden and Mahaffey</u>

The undersigned has found that the FAC adequately alleges that Officers Ogden and Mahaffey falsely arrested plaintiff by taking him into custody without probable cause. There are no specific allegations implicating any other defendant in the arrest, however. The motion should be granted as to defendants other than Officers Mahaffey and Ogden.

        4.   <u>The FAC Does Not State a Substantive Due Process Claim</u>

"[W]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." <u>Albright v. Oliver</u>, 510 U.S. 266, 274 (1994). The gravamen of the FAC is the use of excessive force, false arrest, and retaliation for speech. The Fourth Amendment directly governs plaintiff's excessive force and false arrest claims, and the First Amendment governs his retaliation claim. Plaintiff therefore has no need to rely on substantive due process to vindicate his rights.

The only role that substantive due process could have in this case is in relation to plaintiff's conditions of confinement at the jail. For the reasons discussed above in the context of the Eighth Amendment claim, the facts fail to support a claim on which relief could be granted.

        5.   <u>The FAC Fails to State a First Amendment Claim Against Defendants Other Than Officer Ogden</u>

The undersigned has found that the FAC alleges facts sufficient to state a First Amendment retaliation claim against Officer Ogden. However, plaintiff does not state facts indicating that any other officer defendant took unlawful action *because of* his speech. Thus, the First Amendment claim survives only as to Officer Ogden.

        6.   <u>The FAC Fails to State a Claim for Monell Liability</u>

Plaintiff brings a claim against the City for "Municipal Liability" under 42 U.S.C. § 1983. ECF No. 27 at ¶¶ 61-63. In order to successfully state a claim under § 1983 against a municipality, a plaintiff must go beyond showing the municipality's employee violated his constitutional rights; he must additionally show: (a) an identified municipal "policy" or "custom"

11

that caused his injury; (b) that a final policymaking official, as defined by state law, made the decision at issue; or (c) a final policymaker delegated such authority to, or previously ratified a similar deprivation by a subordinate. Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 403-404, 406-407 (1997); Monell v. Dep't of Soc. Servs. of City of N.Y.C., 436 U.S. 658, 694 (1978).

Here, the FAC does not allege any facts that could support a Monell claim under any of these theories. Plaintiff's only pertinent allegation is a conclusory statement that the involved officers "acted pursuant to the 'City' and WSPD'S policy, custom and/or practice of ordering, allowing, encouraging, endorsing, ratifying and/or tolerating unconstitutional detentions, arrests and uses of force." ECF No. 27 at ¶¶ 34, 36. Such conclusory allegations are insufficient to state a Monell claim. See AE ex rel. Hernandez v. County of Tulare, 666 F.3d 631, 637 (9th Cir. 2012); Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011); Estate of Brooks ex rel. Brooks v. United States, 197 F.3d 1245, 1247 (9th Cir. 1999).
To state a claim for municipal liability, a complaint must specifically identify the policy or custom that caused the unconstitutional conduct. Id. At hearing on the motion, in support of leave to amend, plaintiff stated that he could plead the existence of a "custom" based on his past complaints of departmental dishonesty and fabrication. Plaintiff suggested that the lack of municipal response to his own complaints demonstrates the existence of a "custom" of overlooking and condoning wrongdoing. This is insufficient, because a history of non-response to an individual's complaints, or even hostility to an individual, is not a municipal custom within the meaning of Monell. See Gonzalez v. County of Merced, 289 F. Supp. 3d 1094, 1113 (E.D. Cal. 2017) ("Since Iqbal, courts have rejected conclusory Monell allegations that lack factual content from which one could plausibly infer Monell liability"); Via v. City of Fairfield, 833 F.Supp.2d 1189, 1196 (E.D. Cal. 2011) (holding that merely reciting the general standards giving rise to municipal liability under § 1983 is insufficient to state a Monell claim against a city). Accordingly, plaintiff has failed to state a claim.

Should plaintiff wish to amend this claim, he is informed that Monell does not provide a distinct cause of action, but describes what must be alleged against a municipal entity in order to hold it liable for constitutional violations. The existence of a custom or policy is a way to show

that the municipality itself caused a specific constitutional violation, rather than the violation being the mere conduct of "bad apple" officers.  See Monell, 436 U.S. at 692, 694; see also Lee v. City of Los Angeles, 250 F.3d 668, 681 (9th Cir. 2001).  Accordingly, plaintiff must allege facts showing how a specific City or Police Department custom or policy caused a particular constitutional violation by the individual defendant(s).  Id.  It is not enough to allege that departmental culture tolerates misconduct in general.

### 7. Bane Act

California's Bane Act, codified at California Civil Code section 52.1, "protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out 'by threats, intimidation or coercion.'"  Reese v. County of Sacramento, 888 F.3d 1030, 1040 (9th Cir. 2018) (quoting Venegas v. County of Los Angeles, 153 Cal. App. 4th 1230 (2007)).  The Ninth Circuit recently held that in addition to requiring an actual constitutional violation, the Bane Act carries an additional element of specific intent to violate a person's constitutional rights.  Id.  The FAC does not allege that any defendant acted with specific intent to violate plaintiff's constitutional rights.  Thus, this claim as pleaded cannot not survive.

### 8. Leave to Amend

A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment.  See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987), superseded on other grounds by statute as stated in Lopez v. Smith, 203 F.3d 1122 (9th Cir.2000)) (en banc).  Plaintiff should be granted leave to file a Second Amended Complaint if he so chooses, through the court notes that many of plaintiff's claims survive this motion to dismiss and plaintiff may choose not to file an amended complaint and instead proceed on the surviving claims.

If this recommendation for leave to amend is adopted by the District Judge, and if plaintiff chooses to amend the complaint, he should proceed as follows.  A Second Amended Complaint must allege facts supporting each legal claim plaintiff brings.  The Second Amended Complaint must contain a short and plain statement of plaintiff's claims.  The allegations of the complaint

must be set forth in sequentially numbered paragraphs, with each paragraph number being one greater than the one before, each paragraph having its own number, and no paragraph number being repeated anywhere in the complaint. Each paragraph should be limited "to a single set of circumstances" where possible. Rule 10(b). Forms are available to help plaintiffs organize their complaint in the proper way. They are available at the Clerk's Office, 501 I Street, 4th Floor (Rm. 4 200), Sacramento, CA 95814, or online at www.uscourts.gov/forms/pro-se-forms.

Plaintiff must avoid excessive repetition of the same allegations. Plaintiff must avoid narrative and storytelling. That is, the complaint should not include every detail of what happened, nor recount the details of conversations (unless necessary to establish the claim), nor give a running account of plaintiff's hopes and thoughts. Rather, the amended complaint should contain only those facts needed to show how the defendant legally wronged the plaintiff.

A complaint must not force the court and the defendants to guess at what is being alleged against whom. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (affirming dismissal of a complaint where the district court was "literally guessing as to what facts support the legal claims being asserted against certain defendants"). The amended complaint must not require the court to spend its time "preparing the 'short and plain statement' which Rule 8 obligated plaintiffs to submit." Id. at 1180. The amended complaint must not require the court and defendants to prepare lengthy outlines "to determine who is being sued for what." Id. at 1179.

Also, the amended complaint must not refer to a prior pleading in order to make plaintiff's amended complaint complete. An amended complaint must be complete in itself without reference to any prior pleading. Local Rule 220. This is because, as a general rule, an amended complaint supersedes the original complaint. See Pacific Bell Tel. Co. v. Linkline Communications, Inc., 555 U.S. 438, 456 n.4 (2009) ("[n]ormally, an amended complaint supersedes the original complaint") (citing 6 C. Wright & A. Miller, Federal Practice & Procedure § 1476, pp. 556 57 (2d ed. 1990)). Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

////

### III. PRO SE PLAINTIFF'S SUMMARY

The magistrate judge is recommending that this case move forward on some claims, even though some other claims need to be dismissed. If these findings and recommendations are adopted, the case will go forward on your excessive force, assault and battery, and false arrest claims against Officers Ogden and Mahaffey, as well as your First Amendment retaliation claim against Officer Ogden. These claims lie at the heart of your case. The magistrate judge is recommending that the other claims in your first amended complaint be dismissed.

Because you are representing yourself, the magistrate judge is recommending that you have a second chance to amend your complaint if you wish to do so. If you want to file a Second Amended Complaint to try to fix the problems with the dismissed claims, you will have an opportunity to do so within 30 days after the district judge makes a ruling on these findings and recommendations. However, <u>you do not have to file a Second Amended Complaint if you do not want to</u>. If you wish to proceed solely on the claims that survive the motion to dismiss, you may indicate that choice in writing by the deadline for a Second Amended Complaint.

### IV. CONCLUSION

Accordingly, the undersigned recommends as follows:

1. That the motion to dismiss be ECF No. 30 be GRANTED in Part and DENIED in part as follows:

    a. Plaintiff's first cause of action (Eighth Amendment), fourth cause of action (Substantive Due Process), sixth cause of action (<u>Monell</u> liability), seventh cause of action (Assault), and eighth cause of action (Banes Act) are DISMISSED;

    b. Plaintiff's second cause of action (Excessive Force), third cause of action (False Arrest), and seventh cause of action (Assault and Battery) are DISMISSED as to all defendants EXCEPT Officer Ogden and Officer Mahaffey;

    c. Plaintiff's fifth cause of action (First Amendment) is DISMISSED as to all defendants EXCEPT as to Officer Ogden;

    d. Defendants City of West Sacramento, West Sacramento Police Department, and Officer Schreiber are DISMISSED from this case; and

   e. That plaintiff be granted leave to file a Second Amended Complaint within 30 days of a ruling on the findings and recommendations.

  These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 11, 53, 1156-57 (9th Cir. 1991).

DATED: February 8, 2022

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE