UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBBIE D. WHITE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CITY AND COUNTY OF WEST SACRAMENTO, et al.,<br><br>　　　　Defendants. | No. 2:20-cv-02383 TLN AC PS<br><br><br><u>ORDER</u> and<br><br><u>FINDINGS AND RECOMMENDATIONS</u> |

　　　This civil rights action was removed to federal court on December 1, 2020. ECF No. 1. Plaintiff is now proceeding in pro se following the withdrawal of his attorney. ECF No. 32. Pretrial proceedings were accordingly referred to the undersigned pursuant to Local Rule 302(c)(21). ECF No. 34. This case has a long procedural history, including various periods in which plaintiff was proceeding in pro se and other periods in which plaintiff was represented by counsel. Plaintiff is currently proceeding in pro se. ECF No. 105. The operative complaint is the Second Amended Complaint, ECF No. 53. Plaintiff filed a motion for a preliminary injunction (ECF No. 104) and a motion to change venue (ECF No. 110). For the reasons set forth below, each of these motions must be denied.

### I.　　BACKGROUND

　　　Plaintiff's Second Amended Complaint alleges as follows. On June 29, 2019, plaintiff received a voice message from the Yolo County Dispatcher, stating that there were West

1  Sacramento Police officers outside of his home and advising him that the officers needed to "talk
2  to [Mr. White.]" ECF No. 53 at 6. Mr. White was not at home at the time of the call, and upon
3  subsequent inspection he found nothing out of place. Id. He called the Yolo County Dispatcher
4  to find out exactly why officers were waiting outside his home; the dispatcher referred Mr. White
5  to the Department. Id. On July 2, 2019, plaintiff went to the West Sacramento Police
6  Department to inquire about the call. Id. at 7. He was accompanied by a friend, Cynthia
7  Fleming. Id. Mr. White spoke with a records clerk, on information and belief Julie Durrington,
8  for a few minutes before being interrupted by a man wearing civilian clothing, James Arthur
9  King. Id. Plaintiff asked the clerk about the phone call, and she could find no record of the call.
10 Id.
11     Mr. King, a Caucasian male, interrupted, growing more hostile, loud, and commanding
12 without apparent reason. Id. Mr. King proceeded to threaten plaintiff, stating "You don't know
13 who I am and what I . . ." Mr. White did not hear or cannot remember what was said. Id. Officer
14 Mahaffey approached Mr. White asked Mr. White to speak outside; Mr. White declined stating
15 "You can ask me what's what—I'm not leaving—this man threatened my life." Id. at 8. Mr.
16 White's interaction with Officer Mahaffey up to this point lasted a total of 24 seconds. Id. As
17 Mr. White was finishing this sentence, Officer Ogden entered the lobby through a side door,
18 forcefully grabbed Mr. White's right arm, twisting it to reposition it behind his back, and
19 simultaneously Officer Cobb placed Mr. White's right arm in an "arm lock" and Officer
20 Mahaffey violently forced Mr. White's left arm behind Mr. White's back. Id. Plaintiff asked
21 "Why are you harming me?" and stated unequivocally "I'm not resisting. I'm not resisting." Id.
22 He repeatedly informed the officers that they were hurting him and that his arm was injured. Id.
23 Mr. White was ultimately surrounded by seven officers: Officer Ogden, physically restraining Mr.
24 White; Officer Mahaffey, physically retraining Mr. White; Officer Cobb, physically restraining
25 Mr. White; Sgt. Iwanicki watching; Officer Schreiber watching; Officer Hudelson watching; and
26 Officer Kinda watching. Id.
27     On Sgt. Iwanicki's order Mr. White was marched outside. Id. at 9. At no time did any
28 officer intervene or intercede. Id. Officers Schreiber, Boehle, Montez, Kinda, and Iwanicki were

all within feet of Mr. White and all saw and heard the incident. Officer Montez stood the furthest away and looked on silently. Id. While being forcefully marched from the lobby, Mr. White remarked to Officer Ogden, "I smell alcohol on you; you've got alcohol on your breath!" Id. Immediately upon leaving the view of the lobby camera, angered by plaintiff's remark, Officer Ogden violently and with great force pinned Mr. White against a hot stucco wall. Id. On information and belief, he intended to slam Mr. White's face against the wall, and this was avoided only by Mr. White turning his face away from the wall. Id.

Plaintiff was interrogated but attempted to invoke his right to remain silent. Id. at 10. Eventually, Officer Ogden informed plaintiff that he was under arrest, at which point Officer Ogden, assisted by Officer Kinda, forcefully marched plaintiff, using a pain compliance technique to force Mr. White's handcuffed arms backwards and skyward, doubling him over forcing his torso towards the ground. Id. Despite the temperature—it was approximately 83 degrees Fahrenheit—Mr. White was placed in the back of a police car with the windows rolled up. Id. Plaintiff informed all officers they were hurting him, and he was in pain. Id. Plaintiff was never read his Miranda rights and arrived at Yolo County Jail around 3:00 p.m. Id. at 11.

Plaintiff alleges that upon arriving at the jail, the officers attempted to determine the cause of arrest and completed a false police report stating that plaintiff smelled of alcohol. ECF No. 53 at 12. At the Jail, plaintiff was initially placed in a clean cell for three hours, after which he took a breathalyzer test. Id. at 15. After the test confirmed that plaintiff did not have alcohol in his system, plaintiff was moved to a filthy cell where he remained for 8 hours, from approximately 6:30 p.m. to 2:45 a.m. Id. at 16. Around 2:30 in the morning on July 3, 2019, plaintiff was asked if he would like to go home. Id. He was released around 3:00 a.m. Id. Plaintiff alleges he has suffered ongoing physical and mental health injuries because of his arrest and detention. ECF No. 53 at 18.

Plaintiff alleges defendants violated his Fourteenth Amendment due process and equal protection rights, his Fourth Amendment rights against excessive force and false arrest, and his First Amendment right against retaliation. Plaintiff alleges Sheriff Lopez, in his official capacity and Yolo County have violated their constitutional obligations on a failure to train theory, and

3

that multiple defendants unconstitutionally failed to intervene. Finally, plaintiff alleges defendants committed the tort of battery under California common law and velated the Bane Act. ECF No. 53 at 18-28.

## II.   MOTION TO CHANGE VENUE

Plaintiff moves to change venue from the Eastern District of California to the Southern District of California "on the grounds of Plaintiff safety, convenience and preservation of justice." ECF No. 110. Plaintiff argues that there have been multiple procedural irregularities, various instances of prejudicial conduct on the part of various judges, and undue delay in this case. Id. at 3-4. Plaintiff also asserts he had to move three times in the last year to avoid surveillance from defendants and is living in hiding. Id. at 4.

The federal venue statute provides that a civil action "may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) if there is no district in which an action may otherwise be brought as provided in this action, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). In this case, the defendants are in the Eastern District of California and all the facts giving rise to this case took place in the Eastern District of California. The undersigned has reviewed the docket and found nothing to indicate that plaintiff's case has not or cannot be fairly heard in this district. The motion to change venue is DENIED because venue is proper in the Eastern District of California.

## III.   MOTION FOR PRELIMINARY INJUNCTION

Plaintiff moves for a preliminary inunction against the City of West Sacramento, Yolo County, and its agents from "further threats, harassment, and harm during the pendency of this action." ECF No. 104 at 1. "A preliminary injunction is an 'extraordinary and drastic remedy'; it is never awarded as of right." Munaf v. Geren, 553 U.S. 674, 689-90 (2008) (citations omitted). When evaluating the merits of a motion for preliminary injunctive relief, the court considers several factors. Under Winter v. Natural Resources Defense Council, 555 U.S. 7 (2008), the

proper test requires a party to demonstrate: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of an injunction; (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. Winter, 555 U.S. at 20; see Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing Winter). The propriety of a request for injunctive relief hinges on demonstrated and immediate threatened irreparable injury that must be imminent in nature. Caribbean Marine Servs. Co. v. Baldrige, 844 F.2d 668, 674-75 (9th Cir. 1988); see also Associated General Contractors of California, Inc. v. Coalition for Economic Equity, 950 F.2d 1401, 1410 (9th Cir. 1991) (citation omitted) ("A plaintiff must do more than merely allege imminent harm . . . he or she must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief.").

Plaintiff's motion for a preliminary injunction should be denied for several reasons. First, plaintiff's argument as to his likelihood of success on the merits does not address the underlying operative complaint, but instead makes generalized statements about the "array of compelling allegations and evidentiary substantiation." ECF No. 104 at 1. Plaintiff generally asserts he is being targeted, and states that there have been two questionable attempts to prosecute plaintiff after he filed numerous complaints against the Yolo County District Attorneys office. Id. at 2. None of plaintiff's statements go to whether there is a likelihood of success as to the underlying claims in this case. Plaintiff's arguments as to irreparable harm are likewise generalized and not clearly related to the underlying compliant. ECF No. 104. Plaintiff does not identify any specific harm that would be prevented by a preliminary injunction. Plaintiff's arguments as to the public interest and balance of equities are also generalized and unclear. ECF No. 104 at 5-6.

Perhaps most importantly, plaintiff does not identify what conduct, by whom, he wants the court to enjoin. Though he makes general statements that his constitutional rights are being violated and that he is "suffering ongoing harm," he does not identify any specific actions that are threatened or are being carried out by any specific defendant. The court cannot issue a general injunction as to nonspecific behavior by nonspecific persons. Because plaintiff's motion does not articulate grounds for entry of a preliminary injunction, the undersigned recommends that the motion be denied.

# IV. CONCLUSION

Accordingly, the undersigned ORDERS that the motion to change venue (ECF No. 110) is DENIED.

Further, the undersigned RECOMMENDS that the motion for a preliminary injunction (ECF No. 104) be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 11, 53, 1156-57 (9th Cir. 1991).

DATED: July 14, 2023

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE